## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## HATTIESBURG DIVISION

**FILED**

OCT 23 2006

J.Y. NOBLIN, CLERK

BY _____ DEPUTY

JESSICA SMITH, individually and on behalf
of a class of others similarly situated

           Plaintiff,

vs.

MOTOROLA, INC.;

           Defendant.

Case No. 2:06cv242KS-MTP

**COMPLAINT - CLASS ACTION**
**JURY TRIAL DEMANDED**

Plaintiff, JESSICA SMITH, individually and on behalf of others similarly situated,

brings this action against Defendant MOTOROLA, INC., demanding a trial by jury, as

follows:

### JURISDICTION AND VENUE

1.    This Court has original jurisdiction over this class action pursuant to 28

U.S.C. § 1332(d), in that the matter in controversy exceeds the sum or value of

$5,000,000, exclusive of interest and costs, there are at least 100 members of the

proposed class, and at least one member of the class is a citizen of a different state

than Defendant.

2.    This Court has general and specific personal jurisdiction over the named

Defendant. The Defendant was engaged in unfair business practices directed at and/or

causing injury to persons residing, located or doing business in the United States.

3.    Upon information and belief Defendant is authorized to do business in

Mississippi, has sufficient minimum contacts with Mississippi, and/or otherwise

intentionally avail itself of the markets in Mississippi through the promotion, marketing

and sale in Mississippi of Bluetooth headsets, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

4. Venue is proper in this Court pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1332(d). Plaintiff resided in Covington County, Mississippi at the time that the purchases of the goods at issue were made, and continues to live in Covington County, Mississippi at the present time. Plaintiff purchased the goods at issue in Covington County, Mississippi.

5. At all relevant times, Defendant marketed and sold Bluetooth headset devices to purchasers in Mississippi, including but not limited to, Covington County, Mississippi.

6. This Court has subject matter jurisdiction over this Class and the representative action pursuant to KRS § 367.110 et seq., and other provisions of the Mississippi Code.

## **THE PARTIES**

7. Individual and representative plaintiff Jessica Smith is a resident of Covington County, Mississippi.

8. Upon information and belief, Defendant, Motorola. Inc. (Motorola) is a Delaware corporation, with its principal place of business in Illinois, and is registered to do business, and is doing business, in the state of Mississippi.

9. Motorola is authorized to do business in Mississippi, has sufficient minimum contacts with Mississippi, and/or otherwise intentionally avails itself of the markets in Mississippi through the promotion, marketing and sale of its products in

Mississippi, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

10. This action arises from Defendant's marketing, manufacture, and distribution of devices known as "Bluetooth Headsets," which permit wearers to utilize a mobile phone without holding the phone next to the face and without the necessity of wires connecting the phone to the headset.

11. Motorola has manufactured and distributed many different models of Bluetooth Headsets, including the HS830, the H3, the H300, the H500, the H605, the H700, the HS805, the HS815, the HS820, the HS850, and the HT820 (collectively the "Headsets"). Each Headset is defective in design and not sufficiently adorned with adequate warnings regarding the likelihood of noise induced hearing loss which can occur if the Headsets are used at the higher volume settings over a period of time, a condition which has no cure or treatment.

12. Use of Bluetooth headsets is becoming increasingly popular among the consuming public because of the ease and convenience associated with the technology. According to the Insight Research Corporation (IRC), "[n]early 65 percent of Americans, or 195 million people, are expected to be mobile phone subscribers by the close of 2005." IRC has also reported that "[a]s users become more used to the convenience of cellular, long distance and local usage is shifting from wireline to cellular. The average wireline residential toll minutes of use (MOUs) have been dropping at a compounded rate of 15 percent since 2000, while wireless interstate MOUs per user grew at a compounded rate of nearly 40 percent during the same

period. According to one FCC study, on the wireless side, the percentage of interstate residential minutes has increased from 16 percent to 26 percent of all wireless minutes." As more and more people switch from using landlines to using mobile phones in order to accommodate their telecommunication needs, more and more consumers are spending hours per day on the mobile phone. Such increased usage is particularly dramatic with respect to individuals using a mobile phone for business purposes.

13.     As explained by the National Institute on Deafness and Other Communication Disorders (NIROCD) (www.nidcd.nih.gov/health/hearing/noise.asp), "[h]earing is a series of events in which the ear converts sound waves into electrical signals that are sent to the brain and interpreted as sound. The ear has three main parts: the outer, middle, and inner ear. Sound waves enter through the outer ear and reach the middle ear where they cause the eardrum to vibrate." Noise induced hearing loss "can be caused by a one-time exposure to loud sound as well as by repeated exposure to sounds at various loudness levels over an extended period of time."

14.     "The vibrations are transmitted through three tiny bones in the middle ear, called the ossicles. These three bones are named the malleus, incus, and stapes (and are also known as the hammer, anvil, and stirrup). The eardrum and ossicles amplify the vibrations and carry them to the inner ear. The stirrup transmits the amplified vibrations through the oval window and into the fluid that fills the inner ear. The vibrations move through fluid in the snail-shaped hearing part of the inner ear (cochlea) that contains the hair cells. The fluid in the cochlea moves the top portion of the hair cells, called the hair bundle, which initiates the changes that lead to the production of nerve impulses. These nerve impulses are carried to the brain, where they are

interpreted as sound. Different sounds move the hair bundles in different ways, thus allowing the brain to distinguish one sound from another, such as vowels from consonants."

15.    Plaintiff is informed and believes that noise induced hearing loss is the slow loss of hearing caused by too much noise. Hearing loss happens when too much noise hurts the hair cells in the inner ear. Noise induced hearing loss is one of the most common causes of nerve deafness. Noise induced hearing loss lasts forever. There is no treatment, no medicine, no surgery, and no device which can correct hearing once damaged by noise.

16.    Noise induced hearing loss can happen gradually over time and does not cause pain. As such, one may not be aware that noise induced hearing loss is occurring until it is too late.

17.    Noise induced hearing loss can also result because an individual has become accustomed to a particular sound level. As the individual gradually suffers hearing loss, in an effort to compensate for the decrease in ability to hear, the individual unwittingly increases the volume of a device in order to hear the sound produced and thereby compounds the injury.

18.    Noise induced hearing loss is a serious and permanent injury. According to the UCLA Ergonomics division, normal conversation measures around 60 decibels and headphones kept at this level do not pose a risk of hearing loss.

19.    Exposure to a time weighted average decibel level by itself can cause harm. One knowledgeable organization, the National Institute for Occupational Safety and Health (NIOSH), has offered the view that exposure to sound averaging at 85

decibels for more than 8 hours a day by itself presents a risk of hearing loss. According to NIOSH, each three decibel volume increase reduces the safe exposure time by half, which reflects the logarithmic nature of the decibel scale. For example, if a Headset set on the higher volume level produces decibel levels of 91 decibels, noise induced hearing loss could occur if the Headset is used for more than two hours a day. At 94 decibels, noise induced hearing loss could occur if the Headset is used for more than one hour a day. Of course, the time weighted average standards do not address the harm caused by a very brief exposure to high decibel spikes of noise, as addressed *infra*.

20.     Another organization, Dangerous Decibels, a public health partnership for the prevention of noise induced hearing loss, advises the public that "[a] dangerous s o d is anything that is 85 dB (sound pressure level - SPL) or higher." The organization further explains that "[o]f the roughly 40 million Americans suffering from hearing loss, 10 million can be attributed to noise-induced hearing loss (NIHL). NIHL can be caused by a one-time exposure to loud sound as well as by repeated exposure to sounds at various loudness levels over an extended period of time."

21.     Motorola's Headsets have volume controls which have the capacity to produce sounds with time weighted averages exceeding 85 decibels, with sound often peaking in excess of 100 decibels. The Headsets are designed in such a manner that the consumer is deprived of any ability to determine the decibel level of the sound being emitted from the Headset. In a test recently performed by the American Speech-Hearing-Language Association, Motorola's H700 model Headset produced decibel levels of up to 106 decibels at the high setting. According to the time weighted average

standards suggested by such organizations as NIOSH and Dangerous Decibels, a consumer could suffer NIHL if exposed to such sounds for between only three to four minutes a day.

22.     In addition to the noise induced hearing loss which can result from exposure to a particular time weighted average decibel level over a period of time, Headset users can also suffer hearing loss as a result of a sudden exposure to a high spike of noise. High pitched loud sounds from the other end of the line can cause irreversible damage and pain. An acoustic burst, which is a sudden and unexpected variation in sound level, can potentially cause immediate long-lasting damage to the human ear. This can lead to acoustic shock, which can cause symptoms such as headaches, tinnitus, and even loss of hearing.

23.     Millions of consumers have had their hearing put at risk by Motorola's conduct. Because the Headset transmits sound to only one ear, extraneous sound from the environment is simultaneously being heard by the Headset user from the other ear. Such extraneous sound makes it more difficult for the Headset user to isolate and hear the sound being transmitted over the Headset. The Headset user is thus required to maximize the volume of the Headset in order to overcome the extraneous noise being heard in the other ear.

24.     Plaintiff has purchased a Headset manufactured and distributed by Defendant. Plaintiff has used the Headset at the maximum volume level. Plaintiff was not aware that the Headsets were emitting sound in excess of safe decibel levels and that she were being exposed to the potential for noise induced hearing loss over time. If Plaintiff had been advised by Defendant that the Headsets produced sound in excess of

85 decibels when set at the higher volume setting, then Plaintiff would have known that she would be required to minimize the time during which the higher volume settings were used or not use such settings at all.

25.    The design, manufacture, distribution and sale by Defendant of the Headsets without adequate warning labels and in a manner which produces decibel levels harmful to the human ear constitutes deceptive and unlawful business practices. As a result of Defendant's conduct, numerous consumers have been exposed and continue to be exposed to the decibel levels harmful, or potentially harmful, to their ability to hear.

26.    The packaging on the Headsets advises that the Headsets can be used for a certain amount of talk time. The various models indicate talk time of 3.5 hours, 6 hours, 8 hours, 10 hours, 17 hours, and even 30 hours.

27.    Motorola manufactures and sells its Headsets without any warning as to the decibel levels the devices emit. Motorola sells its Headsets with a booklet entitled Important Safety and Legal Information." The booklet informs the consumer in bold print that it provides **"IMPORTANT INFORMATION ON SAFE AND EFFICIENT OPERATION. READ THIS INFORMATION BEFORE USING YOUR DEVICE"** The booklet contains three pages of "Safety information." The booklet also includes a four page section on "Wireless Phone Safety Tips." Despite the seven pages of material devoted to the safe use of the Headset, Motorola fails to divulge the decibel output of the device and the potential for noise induced hearing loss if the Headset is used at a loud setting for more than a safe number of hours per day. The exclusion of such information from the safety information and tips in the booklet wrongly implies that the

Headset is safe at its maximum volume for the hours of talk time permitted by the Headset.

28.     The Headsets can be used to listen to music or television downloaded onto mobile phones, including certain mobile phones manufactured and sold by Motorola. Because of these new uses for the mobile phone, the time over which the Headsets are used is increased significantly. The decibel levels of the music or television also exceeds 85 decibel levels, and may even reach levels capable of producing hearing loss from a single exposure to the load sound emitted.

29.     Other manufacturers of music listening devices, such as Apple with respect to its iPod, include a warning so that consumers are aware of the potential for hearing damage. For example, the iPod is sold with the following warning:

> Avoid Hearing Damage
>
> Warning: Permanent hearing loss may occur if earphones or headphones are used at high volume. You can adapt over time to a higher volume of sound, which may sound normal but can be damaging to your hearing. Set your iPod's volume to a safe level before that happens. If you experience ringing in your ears, reduce the volume or discontinue use of your iPod.

The Headsets manufactured, distributed and sold by Defendants, which contain no such warnings, thus fail to follow industry standards for music listening devices.

30.     Plaintiff seeks on behalf of herself and the Class as defined below, injunctive relief, product repair and damages. Had Plaintiff and the Class she seeks to represent known of the defective characteristics of the Headsets, and the capacity for

causing noise induced hearing loss, she would not have purchased them or would have purchased them at a lesser price.

## CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this action both on behalf of herself, and as a class action on behalf of the following Class (the "Class"):

> All persons who, within the three years prior to the filing of this
> Complaint ("Class Period"), purchased a Bluetooth Headset
> device manufactured by Defendant, and who (l) resided in
> Mississippi during the Class Period; (2) purchased the Headset
> while located in Mississippi; or (3) purchased the Headset from
> a source in Mississippi.

Said definition may be further defined by additional pleadings, evidentiary hearings, a class certification hearing, and order of this Court.

32.    Although Plaintiff does not know the exact number of the members of the Class, since such information is within the exclusive control of Defendant, Plaintiff believes that due to the nature of the commerce involved, the number of members of the Class are sufficiently numerous, most likely thousands of purchasers, that joinder of all class member is impracticable.

33.    The claim of Plaintiff is typical of the Class claims. Plaintiff purchased one or more Headsets manufactured by Motorola within the Class Period. The Headsets were defectively designed and unfairly marketed by Motorola. All Class members purchased the Product within the Class Period.

34.    Numerous questions of law and fact are common to the Class, which predominate over any individual issues. Questions of law and fact which are common to the Class include, without limitation:

a.    Whether Defendant represented to consumers that the Headsets had a characteristic, use, benefit or quality that rendered the Headsets safe for listening to sounds at a loud volume level and/or over a period of time;

b.    Whether the Headsets in fact have a characteristic, use, benefit or quality that renders it unsafe for listening to sounds at a loud volume level and/or over a period of time;

c.    Whether the Headsets were defectively designed in that they can cause exposure to dangerous levels of sound;

d.    Whether Defendant failed to accurately and sufficiently warn of the defective characteristics of the Headsets:

e.    Whether Defendant knowingly concealed the defective design of the Headsets;

f.    Whether Defendant truthfully advertised that the Headsets could safely be used for extended periods of time;

g.    Whether Defendant violated express and implied warranty statutes;

h.    Whether Defendant was unjustly enriched;

i.    The nature and extent of damages and other remedies to which the conduct of Defendant entitle the Class members.

35.     Defendant engaged in a common course of conduct involving similar or identical defective designs, statutory violations, and defective products. Individual questions, if any, pale by comparison to the numerous questions that dominate this litigation. The claims at issue herein do not seek damages for physical injury which has already occurred to the Class members, and thus individualized determination as to causation related to bodily injury already suffered will not be required. The injuries sustained by the Class members arise from a common nucleus of operative facts involving the Defendant's misconduct.

36.     Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff, who is a Mississippi resident, is a typical purchaser of the Headsets. Plaintiff's interests do not conflict with the interests of the other Class members that she seeks to represent. Furthermore, Plaintiff has retained competent counsel experienced in class action litigation. Plaintiff's counsel will fairly and adequately protect the interests of the Class.

37.     This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. The Class is readily definable. A class action will enable claims to be handled in an orderly and expeditious manner. A class action will save time and expense and will ensure uniformity of decisions.

38.     The relief sought per individual member of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis. Even if the Class members themselves could afford such individual litigation, the court system could not.

39.     The Class members have been damaged by Defendant's misconduct in that each member purchased a defectively designed Headset. The Class members would not have purchased the Headsets and/or paid as much had they known the truth about the product and the limitations on its use.

40.     Individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the Class members' claims and the law applicable thereto, the Court and the parties will easily be able to manage a class action.

41.     Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant.

42.     Injunctive relief is appropriate as to the Class as a whole because Defendant has acted or refused to act on grounds generally applicable to the Class.

## COMMON OR GENERAL INTEREST ALLEGATIONS

43.     In addition to asserting class action claims in this action, Plaintiff asserts claims on behalf of the common or general interest and sues for the benefit of all because the parties are numerous, and it is impracticable to bring them all before the court. Plaintiff seeks to require Defendant to disgorge and restore all monies wrongfully obtained through their false advertising and unfair business practices. A common or general interest action is necessary and appropriate because Defendant has engaged

and continues to engage in the wrongful acts and false advertising described herein as a general business practice.

**FIRST CAUSE OF ACTION**
**Violations of Illinois Deceptive Business Practices Act, 815 ILCS 510/2(a)**

44.     Plaintiff incorporates by reference all the above allegations as is fully set forth herein.

45.     Defendant, Motorola has its headquarters in Illinois and as such the nucleolus of Defendants conduct originated and continues to originate from their corporate offices in Illinois.  It is Defendant's conduct that originates in Illinois which forms the basis of the particular claim.

46.     Defendants acts and decisions on production of an unsafe product and also failing to warn innocent consumers of the problems with this product is the conduct which causes the injuries to Plaintiff and the rest of the class.

47.     815 ILCS 510/1, et seq., was in full force and effect at all times relevant to this litigation.

48.     815 ILCS 510/2(a) holds that an entity "engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," that entity:

(1)     advertises goods or services with intent not to sell them as advertised;

(2)     makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(3)     engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

49.     The general public, including Plaintiff and members of the Class, reasonably and routinely rely upon print, television, radio, and electronic advertising and

marketing in making purchasing decisions. In designing, promoting, marketing, merchandising, selling, advertising, distributing, and maintaining the Headsets and marketing materials, Motorola was aware that if it disclosed that normal and intended use of the Headsets could cause injuries to the public, including noise induced hearing loss, Plaintiff and Members of the Class would not have purchased the Headsets.

50.    Defendants have represented that the Headsets have characteristics, uses, benefits, or qualities that they do not have. Defendants also represented that the Headsets had a particular standard or quality that they do not have.

51.    Plaintiff and the Class members have suffered injury in fact and lost money or property as a direct and proximate result of deceptive trade practices by Defendants, as Plaintiff and the Class members paid the purchase price for an unsafe product which would not have been purchased if Defendants had not made misrepresentations and concealed or omitted material information as to the safety of the product and its limitations. Plaintiffs and the Class members relied upon Defendants to disclose all pertinent safety information and the limitations on the safe usage of the product. Plaintiffs and the Class members have further suffered injury in fact having been subjected to a nuisance and as to which they were subjected by virtue of money innocently paid in purchasing a product injurious to health so as to interfere with the comfortable enjoyment of life.

52.    The actions of Defendants, as complained herein, constitute unfair, deceptive and unlawful trade practices committed in violation of Illinois law. In addition to the Defendants' wrongful conduct as described above and incorporated herein,

Defendants committed, and will continue to commit, one or more of the following wrongful acts in violation of 815 ILCS 510/2(a):

a.  Marketed, advertised, designed, sold, and distributed the Headsets with actual and/or constructive knowledge of the risks presented by their use;

b.  Misrepresented the true nature of the Headsets;

c.  Deceived consumers into thinking they are purchasing Headsets which were reasonably safe for their normal and intended use:

d.  Purposefully and knowingly failed to adequately warn consumers of the safety risk presented by use of the Headsets;

e.  Advertised and marketed the Headsets with a representation that the Headsets could be used in excess of the number of hours which would be safe, even though Defendants knew or should have been known that such use could be unsafe;

f.  Failed to include in the safety information provided with the Headsets any mention of the potential for noise induced hearing loss, even though such a warning had been issued by competitors;

g.  Concealed, omitted and/or suppressed information as to the decibel levels emitted by the Headsets and the corresponding time limitations for use;

h.  Concealed the dangers posed by the Headsets;

i.  Mislead consumers about he nature, extent, utility, and safety of the Headsets;

j.  Violated regulations limiting exposure to certain decibel levels over certain periods of time; and

k.  The Headsets, and Defendants' sale thereof to a considerable number of persons, constitutes a nuisance because the Headsets are injurious to health and/or interfere with the comfortable enjoyment of life, in violation of Illinois law.

53.  Upon information and belief, Defendants knew, or should have be known, of the risk of hearing loss posed by the Headsets, but Defendants chose to market and

sell the Headsets without adequate warning or modifications because such warnings or modifications could have had an adverse impact on the sale of the Headsets and the revenue flowing to Defendants.

54.    Plaintiff, and the Class members, have suffered damages as a result of the conduct of Defendants, because Plaintiff and the Class members were misled into purchasing a product which was not safe and which was not what Defendants advertised the product to be.

55.    Upon information and belief, the Defendant's conduct alleged herein occurs and continues to occur in Defendant's business.  The conduct of Defendants is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

56.    Upon information and belief, the continuing sales of the Headsets to the unsuspecting public, without warning and any mechanism by which the public may protect its hearing, exposes the consuming public in an ongoing danger of noise induced hearing loss, an irreparable and devastating loss.  Because the noise induced hearing loss at issue herein is a silent conditions (i.e., one is unaware that it is occurring as it evolves and until it is too late) that progressively occurs over time, everyday the consuming public uses the product, consumers continue down the path of noise

57.     Plaintiff and the Members of the Class have suffered injury as a direct and proximate result of the Defendant's conduct, and they are entitled to all applicable damages, equitable relief, and attorneys' fees.

58.     Wherefore, Plaintiff and the members of the Class request this Court to enter an order awarding Plaintiff and the members of the Class a judgment for attorneys' fees and enjoining Defendants from the following activities:

    a.     Selling, marketing or advertising the Headsets without a warning advising the consumer as to the product's potential for causing noise induced hearing loss;

    b.     Selling, marketing or advertising the Headsets without a mechanism by which the user can determine the decibel levels being emitted by the Headsets and thereby be made aware of the safe time limits for use of the Headsets at the higher volume settings;

    c.     Any other conduct which the Court determines wrongful and/or in violation of Illinois law so as to prevent the commission of unfair and deceptive practices by Defendants.

## SECOND CAUSE OF ACTION
### Deceptive Advertising pursuant to MS Code § 97-23-3

59.     Plaintiff incorporates by reference all the above allegations as is fully set forth herein.

60.     Plaintiff brings this cause of action on behalf of herself, on behalf of the class, and on behalf of the common or general interest. Plaintiff and the Class members have suffered injury in fact and lost money or property as a result of deceptive advertising by Defendants

61.     In violation of Mississippi law, Defendant made representations and statements of fact with the "intent to increase the consumption of or demand for such merchandise" that where false and/or misleading in violation of MS Code § 97-23-3.

18

These statements deceived Plaintiff and the other class members and were material in that they influenced the purchasing decisions of Plaintiff and the class members.

62.     As set forth herein, Defendant made representations disseminated to the public as to the uses of the Headsets in advertisements, product descriptions and other sales materials, while also concealing and/or omitting relevant information which would have qualified such affirmative representations. These representations and concealments were made to induce the public to purchase the Headsets. The representations were false.

63.     Defendant was aware, or by the exercise of reasonable investigation/care should have been aware, that the representations were untrue or misleading. Defendant also was aware, *or* by the exercise of reasonable investigation/care should have been aware, that the concealments and omissions should have been disseminated in the advertising.

64.     The omission of the limitations of the Headsets was material and likely to mislead consumers acting reasonably under the circumstances.

65.     Based on the foregoing, and as stated elsewhere herein, Defendant has engaged in acts of deception in advertising.

66.     Plaintiff has been harmed, and on behalf of herself, on behalf of the Class, and on behalf of the common or general interest, seeks restitution, injunctive relief and all other relief allowable under Mississippi law.

67.     Plaintiff and members of the Class are entitled to remedies as set forth herein.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**

68.     Plaintiff incorporates by reference all the above allegations as is fully set forth herein.

69.     Defendant has benefited and been unjustly enriched by the above-alleged conduct. Defendant knowingly sold the Headsets to Plaintiff and members of the Class based upon misrepresentations as to uses which the product did not possess and concealment and omission of information which should have been disseminated.

70.     Defendant has knowledge of this benefit, and has voluntarily accepted and retained this benefit.

71.     The circumstances as described herein are such that it would be inequitable for Defendant to retain these ill-gotten benefits without paying the value thereof to Plaintiff and the Class members.

72.     Plaintiff and the Class are entitled to the amount of Defendant's ill-gotten gains, including interest, resulting from its unlawful, unjust and inequitable conduct as described above.

### FOURTH CAUSE OF ACTION
**Breach of Express Warranty**
**MS Code § 75-2-313**

73.     Plaintiff incorporates by reference all the above allegations as is fully set forth herein.

74.     This claim is asserted on behalf of a sub-class of all persons whose express warranty is still in effect.

75.    Defendant expressly warranted that its products were free of defects in materials and workmanship.

76.    Defendant's Headsets are defective in that they expose Plaintiff and the Class members to noise induced hearing loss.

77.    Plaintiff and the Class members have incurred damages as described herein as a direct and proximate result of the defective design on the Headsets and Defendant's violation of the provisions of MS Code § 75-2-313.

### FIFTH CAUSE OF ACTION
**Breach of Implied Warranty**
**MS Code § 75-2-314**

78.    Plaintiff incorporates by reference all the above allegations as is fully set forth herein.

79.    This claim is asserted on behalf of a subclass of all purchasers of the Headsets who purchased it within one year of the filing of this Complaint.

80.    The Headsets are consumer goods. Defendant is a merchant with respect to goods of that kind.

81.    The Headsets were sold with the implied warranty of merchantability in that they would pass without objection in the trade, are fit for the ordinary purpose for which they are used, are adequately contained, packaged, and labeled, and conform to the promises or affirmations of fact made on the container and label. The Headsets do not meet any of the foregoing criteria.

82.    The Headsets were sold with the implied warranty of fitness in that Defendant had reason to know of the particular purpose for which the Headsets were required (i.e., to listen safely to communications, music and television via mobile

phones) and Plaintiff and the Class members relied upon Defendant's skill and judgment to furnish suitable goods. The Headsets are not suitable for the purpose for which they are required, as Plaintiff and the Class members have no ability to determine the decibel levels being emitted from the devices and the corresponding safe time during which Plaintiff and the Class members may listen to the sound being emitted at such levels.

83.     The defect in the Headsets existed prior to the delivery of the Headsets to Plaintiff and the Class members.

84.     Plaintiff and the class members have incurred damages as described herein as a direct and proximate result of the defective design on the Headsets and Defendant's breach of the implied warranties.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and as representative of all other persons similarly situated, pray for judgment against the Defendant, as follows:

1. An Order certifying the Class and any appropriate sub-class thereof, and appointing Plaintiff, Jessica Smith and her counsel, to represent the Class;

2. An award of general damages according to proof;

3. An award of special damages according to proof;

4. An award of punitive damages in an amount sufficient to deter and make an example of Defendant;

5. An award of restitution in an amount according to proof;

6. A permanent injunction enjoining Defendant, and their agents, servants, employees and all persons acting under or

in concert with them, to cease and desist from the following acts:

(i)     Selling, marketing or advertising the Headsets without a detailed warning advising the consumer as to the potential for noise induced hearing loss and the known risk of harm associated with exposure, even for brief intervals, to sound at high decibel levels;

(ii)    Selling, marketing or advertising the Headsets without a mechanism by which the user can readily and easily determine the decibel levels being emitted by the Headsets and thereby be made aware of the safe time, limits (if any) for use of the Headsets at the higher volume settings;

(iii)   Any other conduct which the Court determines warranted so as to prevent the commission of unfair competition by Defendant.

7.   For reasonable attorneys' fees;

8.   For costs incurred herein,

9.   For prejudgment interest;

10.  For all general, special, and equitable relief to which the Plaintiff and the members of the Class are entitled by law.

DATED: October 23, 2006

**MCHUGH FULLER LAW GROUP, PLLC**

By:  _____

Michael J. Fuller, Jr.
Mississippi Bar # 101156
James B. McHugh
Mississippi Bar # 100876
97 Elias Whiddon Road

Hattiesburg, MS 39402
Telephone: 601-261-2220
Facsimile: 601-261-2481

And

Stephen M. Garcia
Sarina M. Hinson
The Garcia Law Firm
One World Trade Center, Ste. 1950
Long Beach, CA 90831
Telephone:   800-281-8515
Facsimile     562-216-5271

And

Melissa Harnett
Wasserman, Comden & Casselman, LLC
5567 Reseda Blvd., Ste. 330
P.O. Box 7033
Tarzana, CA 91357-7033
Telephone:   818-705-6800
Facsimile:    818- 996-8266

Attorneys for Plaintiff